IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **GULFSIDE CASINO PARTNERSHIP** § | | **PLAINTIFF** |
| § | | |
| v. § | **CIVIL ACTION NO. 1:07CV110-LG-JMR** | |
| § | | |
| **MISSISSIPPI RIVERBOAT COUNCIL,** § | | |
| **UNITE HERE, INTERNATIONAL** § | | |
| **BROTHERHOOD OF TEAMSTERS** § | | |
| **and INTERNATIONAL UNION OF** § | | |
| **OPERATING ENGINEERS** § | | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY**

BEFORE THE COURT is the Motion to Compel Arbitration and to Dismiss or Stay [16] filed by Defendants, Mississippi Riverboat Council, UNITE HERE, International Brotherhood of Teamsters, and International Union of Operating Engineers. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Defendants' Motion should be denied, since there is no valid agreement to arbitrate.

**FACTS**

On October 20, 2004, the Mississippi Riverboat Council and Grand Casinos of Mississippi LLC, Gulfport, entered into a Memorandum of Agreement ("MOA") that addressed representational and union organizing issues affecting employee rights at the Grand Casino in Gulfport, Mississippi. The MOA contained the following arbitration clause:

> The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration, with Gerald McKay, or only if McKay is unavailable, John Kagel or any other mutually acceptable person, serving as the arbitrator.

(MOA at ¶12). On August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast, destroying the Grand Casino-Gulfport. As a result, the casino and other related facilities were

closed; all employees were laid off; and the casino never resumed operations.  On December 19, 2005, Plaintiff, Gulfside Casino Partnership, purchased "certain distressed, non-operational and non-performing assets of the Grand Casino-Gulfport, including certain lease agreements and the damaged buildings."  (Compl. at 5).  As part of the purchase, Plaintiff and Grand Casino entered into an Assignment and Assumption of Certain Obligations Under Memorandum of Agreement ("Side Agreement"), in which the parties agreed that "[Grand Casino] does hereby SELL, CONVEY, ASSIGN, TRANSFER, and DELIVER to [Plaintiff] effective as of the closing date . . . all of [Grand Casino's] right, title and interest in, to and under [the MOA] as applicable to the Property."   (Side Agreement at 1).  The Side Agreement also provided that Plaintiff "agrees to pay, perform, honor and discharge promptly when due all of Assignor's obligations under the [MOA] as applicable to the Property, in accordance with the terms and conditions contained in the Memorandum."  (Side Agreement at 2).

After the purchase of the assets, Plaintiff constructed a new casino and other related facilities, hired employees, and began operations.  In February of 2007, the Mississippi Riverboat Council demanded that Plaintiff provide it with a list of Plaintiff's employees, their job classifications, departments, and addresses, pursuant to the requirements of the MOA.  Gulfside refused to comply with the Council's demands, and filed this lawsuit, seeking a declaratory judgment that the MOA is not enforceable as to Gulfside.  Plaintiff asserts that it assumed no obligations under the MOA because the Grand Casino had no casino operations, no landside operations, and no employees that were engaged in any gaming or landside operations at the time of the alleged assignment.  Defendants assert that Plaintiff is in breach of the MOA, and that Plaintiff should be required to arbitrate this lawsuit pursuant to the arbitration clause in the

MOA.

## DISCUSSION

In opposition to the Motion to Compel Arbitration, Plaintiff argues that Defendant could not have assigned the agreement to arbitrate under the MOA since there were no operations that could be assigned. However, Defendants argue that this inquiry is a matter for the arbitrator, not the court to decide, pursuant to the arbitration clause, because this argument requires interpretation of the MOA.

The Fifth Circuit has provided guidance on this issue. *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 216-17 (5th Cir. 2003). In *Will-Drill Resources*, the Court held that a court should determine the issue of whether an agreement was ever formed between the parties, while an arbitrator should determine the issue of whether an agreement that was formed between the parties is unenforceable. *Will-Drill Res., Inc.*, 352 F.3d at 219. The Fifth Circuit reasoned:

> Refusing to order arbitration of a dispute where one of the parties claims that it never signed the agreement, and therefore never agreed to anything, is consistent with the Supreme Court's pronouncements that arbitration "does not require parties to arbitrate when they have not agreed to do so," and that "[a]rbitration under the FAA is a matter of consent, not coercion." The Court has made clear that arbitration is a matter of private contract, and "[i]t goes without saying that a contract cannot bind a nonparty." The Court has concluded that: a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide.

*Id.* at 216-17 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002)). One example of a situation in which an arbitrator should determine the dispute is when a party claims that it should not be required to arbitrate because the entire agreement is illegal or voidable.[1] *Id.* at 218-

---

[1] Nevertheless, when fraud, unconscionability, or illegality is alleged with regard to the arbitration clause itself, as opposed to the agreement as a whole, a court should determine the issue pursuant to the doctrine of separability. *Will-Drill Res., Inc.*, 352 F.3d at 214-15.

-3-

19. The Fifth Circuit explained that in these cases there is no question that an agreement was reached between the parties, and only the enforceability of the agreement is at issue. *Id.* However, a court should decide the dispute in the following circumstances because the very existence of an agreement is at issue: when a party claims that it is not bound by an arbitration clause because it was not a party to the original agreement; where a party claims that its signature was forged on the agreement containing the arbitration clause; or where the person that signed the agreement allegedly acted outside the scope of his authority. *Id.* at 216. The Fifth Circuit explained this distinction as follows:

> [W]here the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result. We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.

*Id.* at 219; *see also Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005) (noting that the court not only possesses the authority, but a duty, to determine whether an agreement to arbitrate ever existed between the parties).

In the present case, Plaintiff asserts that it should not be required to arbitrate this dispute because it was not a signatory to the MOA containing the arbitration clause, and the MOA was not properly assigned to Plaintiff, because there was nothing to assign under the MOA. The Court recognizes that an agreement, the MOA, was reached between Grand Casino and the Council, and that a Side Agreement was entered between Plaintiff and Grand Casino that purported to assign the rights and obligations under the MOA to Plaintiff. However, pursuant to the *Will-Drill Resources* case, the pertinent inquiry is whether any agreement *containing an*

*arbitration clause* was entered between the parties.  *Will-Drill Res., Inc.*, 352 F.3d at 216-17 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002))("Refusing to order arbitration of a dispute where one of the parties claims that it . . . never agreed to anything, is consistent with the Supreme Court's pronouncements that . . . '[a]rbitration under the FAA is a matter of consent, not coercion.'").  The issue in this matter is whether it was possible to assign any rights or obligations under the MOA, which is the only agreement that contained an arbitration clause.  If this Court held that an arbitrator should determine this issue, a decision by the arbitration that the MOA was not assigned to Plaintiff would constitute a holding that the arbitrator never had authority to decide the issue.  Therefore, the very existence of an agreement to arbitrate between Plaintiff and Defendants is at issue.[2]  As a result, pursuant to *Will-Drill Resources*, this Court must determine whether the rights and obligations under the MOA could have been assigned to Plaintiff.

    The MOA provides:

> This Agreement shall cover all employees employed in classifications in the bargaining unit described in Exhibit A, or any classification called by different names when performing substantially the same duties, (referred to hereinafter as "Employees") at all riverboat casino **operations** and associated landside **operations** of hotels and restaurants, parking lots or garages, warehouses and repair and maintenance facilities (hereinafter referred to as a "Boat" or collectively as the "Boats") which during the term of this Agreement are owned by, operated by or substantially under the control of the Employer in the State of Mississippi . . . .

(MOA at ¶1)(emphasis added).  The MOA also contained a successorship clause requiring Grand Casino to obtain a written assumption of the MOA from its successor as a condition of any sale,

---

[2]The Court notes that Plaintiff has asserted an alternative argument that the Memorandum is illegal and therefore unenforceable.  This question would be an issue for an arbitrator to determine pursuant to the *Will-Drill Resources* decision.

assignment, or transfer of the property. (MOA at ¶10). Plaintiff argues that it was not possible for Grand Casino to assign anything under the MOA to Plaintiff because the MOA applied only to operations, and all operations ceased due to the destruction caused by Hurricane Katrina. In support of this assertion, Plaintiff relies on *International Union, United Mine Workers of America v. Apogee Coal Co.*, 330 F.3d 740 (6th Cir. 2003), which interpreted a successorship clause in a National Bituminous Coal Wage Agreement ("NBCWA") that required the company to assign all rights and obligations under the NBCWA upon selling or transferring its operations. The Court in *United Mine Workers* held:

> The plain meaning of the term "operations" in Article I of the NBCWA is unequivocal. According to Black's Law Dictionary, operation denotes "the process or operating of mode of action; . . . action; activity." Black's Law Dictionary 1092 (6th ed. 1990). Although this court has not previously considered this issue, this understanding of the term has been confirmed by other courts. "Federal courts have consistently held that the successorship clause applies only to the sale of an active coal mine." *UM-WA v. Sewell Coal Co.*, C.A. No. 2:92-0432, at 5 (S.D. W. Va. July 9, 1993)(granting summary judgment to defendant employer as a matter of law).

*United Mine Workers*, 330 F.3d at 744. As a result, the Court held that the lower court had correctly determined that the term "operations" in the agreement "connoted actively producing mines and does not include mines closed in good faith for economic reasons." *Id.* at 745. The Court held that the employer did not breach the successorship clause by selling its assets after the closing of the mines for economic reasons, since there was no transfer of "operations" as that term was used in the NBCWA. *Id.* at 746.

Here the MOA, by its terms, only pertains to "riverboat casino operations" and "associated landside operations." (MOA at ¶1). It is undisputed that when the Side Agreement was executed, there were no such "operations" because all employees had been laid off, and the

casino and landside operations had been destroyed by Hurricane Katrina. Therefore, since the MOA only applied to active operations, the MOA could not be assigned to Plaintiff after all active operations had ceased. As a result, Plaintiff never agreed to arbitration, and Defendants' Motion must be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendants' Motion to Compel Arbitration and to Dismiss or Stay [16] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 4th day of October, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE